UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ALEX GEORGE URGELOWICH,

                Petitioner,

v.                              Case No. 3:12-cv-12-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                Respondents.
_____

**ORDER**

**I. Status**

      Petitioner Alex George Urgelowich, an inmate of the Florida penal system, initiated this action on September 26, 2011,[1] pursuant to the mailbox rule, by filing a pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1) under 28 U.S.C. § 2254. He filed an Amended Petition (Doc. 3) with exhibits (P. Ex.) on October 6, 2011. In the Petition, Urgelowich challenges a 2006 state court (Suwannee County, Florida) judgment of conviction for sexual battery and sexual battery by a person in familial or

_____

     [1] Urgelowich filed the Petition in this Court on September 30, 2011; however, giving Urgelowich the benefit of the mailbox rule, this Court finds that the Petition was filed on the date Urgelowich handed it to the prison authorities for mailing to this Court (September 26, 2011). See Rule 3(d), Rules Governing Section 2254 Cases in the United States District Courts. The Court will also give Urgelowich the benefit of the mailbox rule with respect to his inmate state court filings when calculating the one-year limitations period under 28 U.S.C. § 2244(d).

custodial authority. Respondents have submitted a memorandum in opposition to the Amended Petition. See Respondents' Response to Urgelowich's Amended Habeas Petition (Response; Doc. 22) with exhibits (Resp. Ex.). On February 8, 2012, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. 11), admonishing Urgelowich regarding his obligations and giving Urgelowich a time frame in which to submit a reply. Urgelowich submitted a brief in reply. See Reply to State's Response to Amended Habeas Petition (Doc. 23). This case is ripe for review.

## II. One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year statute of limitations on petitions for writ of habeas corpus. Specifically, 28 U.S.C. § 2244 provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was

> initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). Like the vast majority of federal habeas petitions, § 2244(d)(1)(A) establishes the limitations period for Urgelowich's claim.

Respondents contend that Urgelowich has not complied with the one-year period of limitations set forth in 28 U.S.C. § 2244(d). The following procedural history is relevant to the one-year limitations issue. In December 2000, in Case No. 2000-386, the State of Florida charged Urgelowich with one count of sexual battery upon a person twelve years of age or older and one count of battery. Resp. Ex. A at 1-3, Information. In February 2001, in Case No. 2001-38, the State of Florida charged Urgelowich with six counts of sexual battery by a person in familial or custodial authority on a child twelve to eighteen years of age. Id. at 15-17, Information. Urgelowich pled no contest to both counts in Case No. 2000-386 and five counts in Case No. 2001-38. Id. at 18. On

3

December 6, 2001, in Case No. 2000-386, for count one, the court sentenced Urgelowich to a year of incarceration in the county jail with credit for time served and six years of sex offender probation. Id. at 18-27. For count two, the court sentenced him to one year of probation, to run concurrently with count one. Id. at 23. In Case No. 2001-38, for counts one through five, the court sentenced Urgelowich to six years of sex offender probation, to run concurrently; the State agreed to nolle prosequi count six. Id. One of the conditions of probation stated: "Unless otherwise indicated in the treatment plan, you may not view, own, or possess any obscene, pornographic, or sexually explicit material, including telephone, electronic media, computer programs, or computer services that are relevant to your deviant behavior pattern." Resp. Ex. A, Order of Probation/Community Control/Sex Offender Probation, filed December 6, 2001, at 24, Condition (15)E. Urgelowich did not appeal.

In April 2006, Urgelowich violated probation when he possessed two pornographic videotapes, nude pictures of males on a computer hard drive, and "nude picture of two young males appearing to be under age on a disk, as evidenced by a search of the offender's residence on 4/15/06." Id. at 28, 29, Affidavit Violation of Sex Offender Probation; 31, Probable Cause Affidavit. After an August 14, 2006 hearing, see Resp. Ex. B (Tr.), the court revoked Urgelowich's probation and sentenced him to a term of fifteen years

4

of incarceration for count one in Case No. 2000-386. In Case No. 2001-38, the court sentenced him to a term of twelve years of incarceration for count one and fifteen years of incarceration for counts two through five, to run concurrently with each other and count one in Case No. 2000-386. Resp. Ex. A at 35-49.

On appeal, Urgelowich, through counsel, filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967). Resp. Exs. D; I. The court permitted Urgelowich to file a pro se brief, <u>see</u> Resp. Exs. E, J, but he did not do so. On June 1, 2007, the appellate court affirmed Urgelowich's conviction and sentence per curiam without issuing a written opinion, <u>see</u> <u>Urgelowich v. State</u>, 958 So.2d 927 (Fla. 1st DCA 2007); Resp. Exs. F; K, and the mandate issued on June 29, 2007, <u>see</u> Resp. Exs. G; L. Urgelowich did not seek review in the United States Supreme Court.

Urgelowich's conviction became final on Thursday, August 30, 2007, (90 days from June 1, 2007). <u>See</u> <u>Close v. United States</u>, 336 F.3d 1283, 1285 (11th Cir. 2003) ("According to rules of the Supreme Court, a petition for <u>certiorari</u> must be filed within 90 days of the appellate court's entry of judgment on the appeal or, if a motion for rehearing is timely filed, within 90 days of the appellate court's denial of that motion."). Because Urgelowich's conviction was <u>after</u> April 24, 1996, the effective date of the AEDPA, Urgelowich had one year from the date his conviction became final to file the federal petition (August 30, 2008). His Petition,

filed on September 26, 2011, is due to be dismissed as untimely unless he can avail himself of one of the statutory provisions which extends or tolls the limitations period.

On August 2, 2007, Urgelowich filed pro se motions for post conviction relief in both cases. Resp. Exs. M at 1-22; N at 1-21. On September 4, 2007, the trial court dismissed Urgelowich's motions due to improper oaths and granted him "leave to re-file a proper motion." Resp. Exs. M at 23-24; N at 22-23. On September 13, 2007, Urgelowich hired counsel (Jeffrey A. Siegmeister) to represent him. P. Ex. 3-1 at 2, Agreement for Legal Services. Between September 13, 2007, and November 13, 2007, counsel prepared a motion for post conviction relief; Urgelowich apparently did not receive the first copy, so counsel mailed him a second copy and asked him to sign and return it. P. Ex. 3-1 at 1, Letter, dated November 13, 2007. Urgelowich alleges that he received the motion on November 16, 2007, read it, had it notarized and returned it on November 18, 2007. Amended Petition at 11; see Resp. Ex. M at 35 (reflecting that he signed and dated the motion on November 28, 2007). Over five months later, on April 30, 2008, counsel filed Urgelowich's motion in both cases. Resp. Exs. M at 25-42; N at 24-41. The court dismissed Urgelowich's motions on May 5, 2008, because his notarized statement did not "comport with the requirements of the notarized oath set forth in Rule 3.987 . . . ." Resp. Exs. M at 43-44; N at 42-43.

6

Urgelowich's motions that were dismissed due to improper oaths were not "properly filed" under Florida law, and therefore did not toll the one-year limitations period. See Jones v. Sec'y, Fla. Dep't of Corr., 499 F. App'x 945, 950 (11th Cir. 2012) ("This Court has held that a Rule 3.850 motion that did not contain the written oath required by Florida law was not 'properly filed' under § 2244(d)(2) and, thus, did not toll AEDPA's one-year limitations period."), cert. denied, 134 S.Ct. 65 (2013); Hurley v. Moore, 233 F.3d 1295, 1297-98 (11th Cir. 2000).

Thus, the one-year limitations period started running on August 31, 2007, and ran for **two hundred and eighty (280) days** until Urgelowich, through counsel, filed an amended motion for post conviction relief (with a proper oath) on June 6, 2008. Resp. Exs. M at 45-61; N at 44-59. The State responded in Case No. 2001-38. Resp. Ex. N at 78-85. The trial court denied the amended motion on July 21, 2010. Resp. Exs. M at 86-95; N at 172-81. On appeal, the parties did not file briefs. On October 20, 2010, the appellate court affirmed the trial court's denial per curiam, see Urgelowich v. State, 49 So.3d 238 (Fla. 1st DCA 2010); Resp. Exs. PD-4; O, and later denied Urgelowich's motion for rehearing on November 29, 2010, Resp. Exs. P; Q. The mandate issued on December 15, 2010. Resp. Ex. PD-4.

The one-year period of limitations started running again on December 16, 2010, and ran for **two hundred and eighty-four (284)**

7

**days** until Urgelowich filed his Petition in this Court on September 26, 2011. Given the record, Urgelowich's September 26, 2011 Petition is untimely filed, and due to be dismissed unless Urgelowich can establish that equitable tolling of the statute of limitations is warranted. The United States Supreme Court has established a two-prong test for equitable tolling, stating that a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010); Cole v. Warden, Ga. State Prison, 768 F.3d 1150, 1157-58 (11th Cir. 2014). As an extraordinary remedy, equitable tolling is "limited to rare and exceptional circumstances and typically applied sparingly." Cadet v. Fla. Dep't of Corr., 742 F.3d 473, 477 (11th Cir. 2014) (internal quotation marks omitted). The burden is on Urgelowich to make a showing of extraordinary circumstances that are both beyond his control and unavoidable with diligence, and this high hurdle will not be easily surmounted. Howell v. Crosby, 415 F.3d 1250 (11th Cir. 2005); Wade v. Battle, 379 F.3d 1254, 1265 (11th Cir. 2004) (citations omitted).

Here, Urgelowich asserts that there are two grounds for equitable tolling: actual innocence and the ineffectiveness of his post-conviction attorney. See Amended Petition (Doc. 3) at 10-12. Urgelowich states that the limitations period should be tolled for: (1) one hundred and fifty-four (154) days from November 28, 2007

8

(when Urgelowich signed and dated the Rule 3.850 motion, <u>see</u> Resp. Ex. M at 35) through April 30, 2008 (when counsel finally filed the motion) because counsel "lied" to Urgelowich's parent during an office visit when counsel "assured" Urgelowich's parent that the motion had been filed in state court, and (2) one hundred and twenty-seven (127) days from December 15, 2010 (when the appellate court issued mandate) through April 21, 2011 (when Urgelowich became aware that mandate had been issued) because counsel "lied, yet again" when he told Urgelowich that the Rule 3.850 motion was still in the appeal process. For purposes of analysis, the Court will assume that equitable tolling applies for the above-stated time periods. Accordingly, the Court will address the merits of Urgelowich's claims.

### III. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id</u>. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's]

9

claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## IV. Standard of Review

The Court will analyze Urgelowich's claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, 28 U.S.C. § 2254(d) "bars religation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." <u>Harrington v. Richter</u>, 131 S.Ct. 770, 784 (2011). As the United States Supreme Court stated, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Burt</u>

v. Titlow, 134 S.Ct. 10, 16 (2013). This standard of review is

described as follows:

> Under AEDPA, when the state court has
> adjudicated the petitioner's claim on the
> merits, a federal court may not grant habeas
> relief unless the state court's decision was
> "contrary to, or involved an unreasonable
> application of, clearly established Federal
> law, as determined by the Supreme Court of the
> United States," 28 U.S.C. § 2254(d)(1), or
> "was based on an unreasonable determination of
> the facts in light of the evidence presented
> in the State court proceeding," id. §
> 2254(d)(2). "Under § 2254(d)(1)'s 'contrary
> to' clause, we grant relief only 'if the state
> court arrives at a conclusion opposite to that
> reached by [the Supreme] Court on a question
> of law or if the state court decides a case
> differently than [the Supreme Court] has on a
> set of materially indistinguishable facts.'"
> Jones v. GDCP Warden, 753 F.3d 1171, 1182
> (11th Cir. 2014) (quoting Williams v. Taylor,
> 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d
> 389 (2000)). "Under § 2254(d)(1)'s
> 'unreasonable application' clause, we grant
> relief only 'if the state court identifies the
> correct governing legal principle from [the
> Supreme] Court's decisions but unreasonably
> applies that principle to the facts of the
> prisoner's case.'" Id. (quoting Williams, 529
> U.S. at 413, 120 S.Ct. 1495).
>
> For § 2254(d), clearly established
> federal law includes only the holdings of the
> Supreme Court – not Supreme Court dicta, nor
> the opinions of this Court. White v. Woodall,-
> U.S. -, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698
> (2014). To clear the § 2254(d) hurdle, "a
> state prisoner must show that the state
> court's ruling on the claim being presented in
> federal court was so lacking in justification
> that there was an error well understood and
> comprehended in existing law beyond any
> possibility for fairminded disagreement."
> Harrington v. Richter, 562 U.S. 86, 131 S.Ct.
> 770, 786-87, 178 L.Ed.2d 624 (2011). "[A]n

'unreasonable application of' [Supreme Court]
holdings must be 'objectively unreasonable,'
not merely wrong; even 'clear error' will not
suffice." <u>Woodall</u>, 134 S.Ct. at 1702 (quoting
<u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76, 123
S.Ct. 1166, 155 L.Ed.2d 144 (2003)). A state
court need not cite or even be aware of
Supreme Court cases "so long as neither the
reasoning nor the result of the state-court
decision contradicts them." <u>Early v. Packer</u>,
537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263
(2002); <u>accord</u> <u>Richter</u>, 131 S.Ct. at 784.

"AEDPA thus imposes a highly deferential
standard for evaluating state-court rulings
and demands that state-court decisions be
given the benefit of the doubt." <u>Renico v.
Lett</u>, 559 U.S. 766, 773, 130 S.Ct. 1855, 176
L.Ed.2d 678 (2010) (citations and internal
quotation marks omitted). And when a claim
implicates both AEDPA and <u>Strickland</u>, our
review is doubly deferential. <u>Richter</u>, 131
S.Ct. at 788 ("The standards created by
<u>Strickland</u> and § 2254(d) are both highly
deferential, and when the two apply in tandem,
review is doubly so." (citations and internal
quotation marks omitted)). [A petitioner] must
establish that no fairminded jurist would have
reached the Florida court's conclusion. <u>See
Richter</u>, 131 S.Ct. at 786-87; <u>Holsey v.
Warden, Ga. Diagnostic Prison</u>, 694 F.3d 1230,
1257-58 (11th Cir. 2012). "If this standard is
difficult to meet, that is because it was
meant to be." <u>Richter</u>, 131 S.Ct. at 786....

<u>Taylor v. Sec'y, Fla. Dep't of Corr.</u>, 760 F.3d 1284, 1293-94 (11th

Cir. 2014); <u>see also</u> <u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1230

(11th Cir. 2014).

Finally, for a state court's resolution of a claim to be an

adjudication on the merits, so that the state court's determination

will be entitled to deference for purposes of federal habeas corpus

review under AEDPA, all that is required is a rejection of the

claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Hittson, 759 F.3d at 1232 ("[T]here is no AEDPA requirement that a state court explain its reasons for rejecting a claim[.]"); Richter, 131 S.Ct. at 785 (holding that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002). Thus, to the extent that Urgelowich's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## V. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not

> functioning as the 'counsel' guaranteed the
> defendant by the Sixth Amendment." Id., at
> 687, 104 S.Ct. 2052.
>
> With respect to prejudice, a challenger
> must demonstrate "a reasonable probability
> that, but for counsel's unprofessional errors,
> the result of the proceeding would have been
> different. A reasonable probability is a
> probability sufficient to undermine confidence
> in the outcome." Id., at 694, 104 S.Ct. 2052.
> It is not enough "to show that the errors had
> some conceivable effect on the outcome of the
> proceeding." Id., at 693, 104 S.Ct. 2052.
> Counsel's errors must be "so serious as to
> deprive the defendant of a fair trial, a trial
> whose result is reliable." Id., at 687, 104
> S.Ct. 2052.

Richter, 131 S.Ct. at 787-88.

Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010)(citation omitted). "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's
> representation is a most deferential one."
> Richter, - U.S. at -, 131 S.Ct. at 788. But
> "[e]stablishing that a state court's
> application of Strickland was unreasonable
> under § 2254(d) is all the more difficult. The
> standards created by Strickland and § 2254(d)
> are both highly deferential, and when the two
> apply in tandem, review is doubly so." Id.

14

(citations and quotation marks omitted). "The
question is not whether a federal court
believes the state court's determination under
the <u>Strickland</u> standard was incorrect but
whether that determination was unreasonable -
a substantially higher threshold." <u>Knowles v.
Mirzayance</u>, 556 U.S. 111, 123, 129 S.Ct. 1411,
1420, 173 L.Ed.2d 251 (2009) (quotation marks
omitted). If there is "any reasonable argument
that counsel satisfied <u>Strickland</u>'s
deferential standard," then a federal court
may not disturb a state-court decision denying
the claim. <u>Richter</u>, - U.S. at -, 131 S.Ct. at
788.

<u>Hittson</u>, 759 F.3d at 1248; <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123

(2009); <u>see also</u> <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th

Cir. 2004) ("In addition to the deference to counsel's performance

mandated by <u>Strickland</u>, the AEDPA adds another layer of

deference--this one to a state court's decision--when we are

considering whether to grant federal habeas relief from a state

court's decision.").

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Urgelowich asserts that counsel (Assistant

Public Defender William F. Williams) was ineffective because he

failed to object to the trial court's violation of probation order

on the ground that condition (15)E in the court's written order of

probation was improper. With the benefit of counsel, Urgelowich

raised the ineffectiveness claim in his amended Rule 3.850 motion.

Resp. Exs. M at 46-48; N at 45-47. The State responded in Case No.

2001-38. <u>See</u> Resp. Ex. N at 80-82. The court denied Urgelowich's

15

amended Rule 3.850 motion as to this ineffectiveness claim, stating

in pertinent part:

> The Defendant alleges that his court-appointed defense counsel was ineffective because he failed to object to the findings of the court at the probation violation hearing. The Defendant asserts that there was not enough evidence presented at the probation violation hearing to support the Court's finding of a violation. Further, he states that defense counsel's objection to the findings "might have cured the error in this case."
>
> There are two problems with the Defendant's argument. First, the Defendant, in his own motion, refutes the allegation that defense counsel did not object to the finding, specifically by saying "defense counsel objected to the trial court's findings on the grounds that the evidence was insufficient to support those findings."[2] Amended Motion for Post Conviction Relief at 3. Second, the Defendant is mistaken in his belief that an objection is the proper mechanism to employ when the defense challenges the findings of a court. When the defense takes issue with a court's ruling, an appeal is the proper mechanism by which to challenge the final judgment.
>
> Here, the Defendant appealed the findings of this Court to the First District Court of Appeal,[3] which affirmed this Court's ruling. Objection to this Court's findings could have been raised on direct appeal but was not. The

---

[2] <u>See</u> Tr. at 86.

[3] Appellate counsel stated that he was "unable to argue in good faith that reversible error occurred with regard to the sufficiency of the evidence before the trial court, the findings made by the court based on that evidence, or the judgment and sentence entered by the court upon revocation of appellant's probation." Resp. Ex. D, Initial Brief of Appellant, at 22.

> Florida Supreme Court held in <u>Johnson</u>: "issues
> which either were or could have been litigated
> at trial and upon direct appeal are not
> cognizable through collateral attack." <u>Johnson
> v. State</u>, 593 So.2d 206, 208 (Fla. 1992).
> Collateral attacks are inappropriate vehicles
> to challenge issues that could have been
> litigated on direct appeal. <u>See</u> <u>Smith v.
> State</u>, 445 So.2d 323 (Fla. 1983).

Resp. Ex. M at 88 (emphasis deleted). The appellate court affirmed

the trial court's denial per curiam, <u>see Urgelowich</u>, 49 So.3d 238,

and later denied Urgelowich's motion for rehearing, Resp. Exs. P;

Q.

Condition (15)E of Urgelowich's probation stated: "Unless

otherwise indicated in the treatment plan, you may not view, own,

or possess any obscene, pornographic, or sexually explicit

material, including telephone, electronic media, computer programs,

or computer services that are relevant to your deviant behavior

pattern." Resp. Ex. A, Order of Probation/Community Control/Sex

Offender Probation, filed December 6, 2001, at 24, Condition (15)E.

Correctional Probation Officer Jessie Bristol explained the

conditions of probation to Urgelowich on December 7, 2001, and

Urgelowich acknowledged that he had received a copy of the order

and that Officer Bristol instructed him on the conditions. <u>Id</u>. at

26; Resp. Ex. A at 28, Affidavit Violation of Sex Offender

Probation. On April 17, 2006, in a probation violation affidavit,

Correctional Probation Specialist Jarrett W. Jarvis stated that

Urgelowich violated his sex offender probation by:

17

> **Violation of Condition (15E) of the Order of Probation**, by viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material, including telephone, electronic media, computer programs, or computer services that are relevant to deviant behavior patterns, and as grounds for belief that the offender violated his probation, **Officer Jarrett W. Jarvis states that on 04/15/06 the offender was found to be possessing (2) two porn video tapes, nude pictures of males on computer hard drive, and nude picture of two young males appearing to be under age on a disk, as evidenced by a search of the offender's residence on 04/15/06.**

Id. at 28 (emphasis added).

At the August 14, 2006 violation of probation hearing, the State called three witnesses: Jarred Wayne Jarvis, who supervised Urgelowich's probation, see Tr. at 5-22, 59-60; Aaron Roberts, Correctional Probation Senior Officer, see id. at 23-42; and Craig Riley, a Special Agent with the Florida Department of Law Enforcement, see id. at 43-58. Urgelowich's counsel cross-examined the State's witnesses, and then briefly recalled Jarvis to elicit his testimony that Urgelowich had passed a polygraph test, see id. at 59. The State argued that it had "clearly proven," id. at 66, that Urgelowich violated condition (15)E, id. at 61-66. Defense counsel ultimately contended that the evidence was "insufficient as presented by the State to carry their burden to establish that there was a willful, intentional and substantial violation under the law." Id. at 68. He stated:

18

> The language in the order of probation says all of this stuff -- and the key issue is relevant to the deviant behavior. Here the deviant behavior was sexual activity with children. Here what they have proved is possession of materials that show sexual activity amongst consenting adults and sexual poses by consenting adults. There is nothing here that shows there is any connection or nexus to the quote unquote relevant deviant behavior of sexual activity with children.

Id.

After examining the exhibits, see id., the trial judge stated in pertinent part:

> The Court finds the defendant is in violation of his probation proven by the clear and convincing evidence that he knowingly possessed pornographic material. The Court's [sic] reviewed the exhibits that have been presented and admitted. I do find them to be pornographic in nature involving male masturbation, ejaculation, fondling one another, exposed open penis of a male. Those exhibits do -- on community standards do constitute pornographic material in the Court's mind, and does find him to be in violation further.

> The individuals['] specific ages, of course, are unknown. **The Court does find further that they all appear to be young males. And the testimony was that they were between 16 and 18.[4] And the Court further finds that this is extremely relevant to the deviant behavior that the defendant committed that placed him on probation in that he sexually – or sexually had contact sexually with numerous young men between the ages of 15 and 17.**

---

[4] See Tr. at 55-56.

19

> For those reasons, the Court does find by
> clear and convincing evidence that he is in
> violation. . . .

Id. at 70-71 (emphasis added).

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. See Anderson v. Sec'y, Fla. Dep't of Corr., 752 F.3d 881, 904 (11th Cir. 2014). The presumption that counsel's performance was reasonable is even stronger when, as in this case, defense counsel Mr. Williams is an experienced criminal defense attorney.[5] The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005). Thus, Urgelowich must establish that no

---

[5] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000); see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney). William F. Williams was admitted to the Florida Bar in 1981. See http://www.floridabar.org. Thus, at the time of Urgelowich's violation of probation hearing in 2006, Williams had been practicing law for almost twenty-five years. Since 2011, Williams has served as a Circuit Court Judge for the Third Judicial Circuit Court in and for Suwannee County, Florida. See http://www.jud3flcourts.org.

competent attorney would have taken the action that counsel, here, chose.

Moreover, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. <u>Waters v. Thomas</u>, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. <u>Ward v. Hall</u>, 592 F.3d at 1164 (quotations and citation omitted); <u>Dingle v. Sec'y for Dep't of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted). Urgelowich has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance.

On the record in this case, counsel's performance was well within the wide range of professionally competent assistance. Even assuming arguendo deficient performance by counsel, Urgelowich has not shown prejudice. He has not shown that a reasonable probability exists that the outcome of the violation of probation proceeding would have been different if counsel had objected on the grounds that condition (15)E was not specifically tailored to Urgelowich's

specific deviant behavior. Urgelowich's ineffectiveness claim fails because he has shown neither deficient performance nor resulting prejudice. <u>See</u> Resp. Ex. N at 80-82; Response at 18-22.

### B. Ground Two

As ground two, Urgelowich asserts that counsel was ineffective because he failed to investigate and call exculpatory witnesses: James Roberts, Eva Harmon, Eddie Cobb and a polygraph examiner. He alleges that Roberts, Harmon and Cobb would have testified that they downloaded the pornographic materials found on Urgelowich's computer, and that the materials were sent to Urgelowich in response to his personal advertisement on a dating website, which was set up as part of his treatment plan. Additionally, he asserts that these witnesses would have established that he had no prior knowledge of possessing any of the pornographic materials. Lastly, he states that the polygraph examiner would have refuted the State's false accusations that Urgelowich knowingly possessed the materials.

Urgelowich raised the ineffectiveness claim in his amended Rule 3.850 motion, <u>see</u> Resp. Ex. M at 48-52, and the State responded, <u>see</u> Resp. Ex. N at 82-83 ("Even if the Defendant's attorney had called exculpatory witnesses to testify in the VOP hearing[,] it is unlikely that they would have been able [to] rebut the Defendant's admission that he possessed and looked at pornographic materials."). Ultimately, the court denied

Urgelowich's amended Rule 3.850 motion as to this ineffectiveness

claim, stating in pertinent part:

> In this claim the Defendant contends that
> defense counsel failed to call exculpatory
> witnesses and this failure deprived the
> Defendant of a fair hearing. The Defendant
> identifies three witnesses that he indicates
> were available to testify at the hearing.
> Further, he states that they would have
> testified to the fact that they had downloaded
> the pornographic material to the Defendant's
> computer thus exculpating him.
>
> The probationary condition that the
> Defendant violated states[:]
>
> > Unless otherwise indicated in the
> > treatment plan, you may not view,
> > own, or possess any obscene,
> > pornographic, or sexually explicit
> > material, including telephone,
> > electronic media, computer programs,
> > or computer services that are
> > relevant to your deviant behavior
> > pattern.
>
> Therefore, if the Defendant viewed or was
> found in possession of pornographic material
> regardless of who downloaded it, the Defendant
> violated his probation. Proposed testimony
> establishing who downloaded pornographic
> materials to a computer is not exculpatory in
> any way. This is especially the case because
> the computer files were not the only
> pornographic images found in the Defendant's
> possession: he also possessed pornographic
> videotapes. Beyond not being exculpatory, the
> testimony the Defendant is seeking to have
> introduced is not even relevant to the
> violation. As the testimony is not relevant to
> the violation hearing, the Defendant cannot be
> found to have been prejudiced by its omission.

Resp. Ex. M at 88-89. The appellate court affirmed the trial court's denial per curiam and later denied Urgelowich's motion for rehearing.

Given the record in the instant action, the appellate court may have affirmed the denial of Urgelowich's motion for post conviction relief on the merits. If the appellate court addressed the merits, Urgelowich would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Urgelowich is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Urgelowich's claim is still without merit. The trial court's conclusion is fully supported by the record. The Eleventh Circuit recently stated:

> Courts are not in the business of micromanaging attorney trial prep. See Richter, – U.S. at –, 131 S.Ct. at 788 ("[I]ntrusive post-trial inquiry threaten[s]

the integrity of the very adversary process
the right to counsel is meant to serve."
(quotation marks omitted)); <u>Strickland</u>, 466
U.S. at 690, 104 S.Ct. at 2066 ("Intensive
scrutiny of counsel and rigid requirements for
acceptable assistance could dampen the ardor
and impair the independence of defense
counsel...."). We are all too familiar with
the strain of claims alleging ineffective
assistance because an attorney could have
interviewed one more witness, read one more
document, or chased down one more loose end.
In the face of these claims, courts have
explained <u>ad</u> <u>nauseam</u> that attorneys are not
required to conduct an exhaustive
investigation of each and every decision made
at trial – merely a reasonable one. <u>See</u>
<u>Strickland</u>, 466 U.S. at 691, 104 S.Ct. at 2066
("[C]ounsel has a duty to make reasonable
investigations or to make a reasonable
decision that makes particular investigations
unnecessary."); <u>Richter</u>, – U.S. at –, 131
S.Ct. at 789 ("Counsel [is] entitled to ...
balance limited resources in accord with
effective trial tactics and strategies.").

    With unlimited time and resources, there
is always something more that might have been
done . . . – such allegations "prove[ ] at
most the wholly unremarkable fact that with
the luxury of time and the opportunity to
focus resources on specific parts of a made
record, post-conviction counsel will
inevitably identify shortcomings in the
performance of prior counsel." <u>Waters</u>, 46 F.3d
at 1514. . . .

<u>Hittson</u>, 759 F.3d at 1250.

    In the instant action, Urgelowich submitted the sworn

affidavits of Eva Harmon, <u>see</u> Pet. Ex. B at 47-48; James Roberts,

<u>see</u> <u>id</u>. at 49; and Eddie Cobb, <u>see</u> <u>id</u>. at 50. None of the proposed

testimony of Harmon, Roberts and Cobb, nor that of the polygraph

examiner (who took Urgelowich's March 30, 2006 polygraph), is

25

exculpatory. See Tr. at 59-60, 64-66. Urgelowich failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance in preparing and presenting an adequate defense at the violation of probation hearing. Even assuming arguendo deficient performance by defense counsel, Urgelowich has not shown prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had called the above-listed witnesses at the hearing to testify on Urgelowich's behalf. Therefore, Urgelowich's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. See Response at 22-24.

### C. Ground Three

As ground three, Urgelowich asserts that counsel was ineffective because he failed to call Pam Miller as a rebuttal witness. He states that Miller, his therapist, was available to testify that she told Urgelowich to visit dating websites so that he could develop a healthy relationship as part of his treatment plan. He alleges that she would have testified that she told him to obtain and possess adult pornographic materials of consenting adults for healthy sexual stimulation. Urgelowich raised the ineffectiveness claim in his amended Rule 3.850 motion, see Resp. Ex. M at 52-54, and the State responded, see Resp. Ex. N at 83-85.

The court ultimately denied Urgelowich's amended Rule 3.850 motion as to this ineffectiveness claim, stating in pertinent part:

> The Defendant claims that his defense counsel was ineffective for failing to call a rebuttal witness, Ms. Pam Miller, during the violation of probation hearing. The Defendant contends that Ms. Miller, his counselor, would have allegedly testified (1) that she instructed him to go online and view dating websites that inadvertently included pornographic materials and (2) that she gave the Defendant permission to possess "adult pornographic type materials." Amended Motion for Post-Conviction Relief at 8.
>
> The terms of the Defendant's probation were determined and announced by this Court – not Ms. Miller. In fact, the Defendant signed the Order of Probation dated December 6, 2001. Condition (15E), reprinted above, is unambiguous: the Defendant was prohibited from viewing, owning, or possessing pornographic and sexually explicit material. Ms. Miller did not possess the authority to alter or eliminate any of the Defendant's probation conditions. Further, it is solely the responsibility of the Defendant to insure that he abides by all conditions of his probation.
>
> Introducing the testimony of Ms. Miller, even if it was completely truthful and believed by the Court, would have had no impact on the Court's decision. The testimony actually presented at the hearing was sufficient to justify the Court's finding that the Defendant violated his probation. Therefore, any testimony that Ms. Miller may have added, specifically how he obtained the pornographic material and whether she had given him permission to do so, would have been immaterial to the relevant issue – whether the Defendant knowingly possessed pornographic material. Because the testimony of Ms. Miller was immaterial and irrelevant to the issue before the Court, the Defendant's defense counsel cannot be ineffective for not calling

> Ms. Miller as a "rebuttal witness." <u>See</u> <u>Dailey</u>
> <u>v. State</u>, 965 So.2d 38, 47 (Fla. 2007)
> ("Defense counsel cannot be deficient for
> failing to raise a meritless claim."). . . .

Resp. Ex. M at 89 (emphasis deleted). The appellate court affirmed the trial court's denial per curiam and later denied Urgelowich's motion for rehearing.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions. Thus, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Urgelowich is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Urgelowich's ineffectiveness claim is still without merit. The trial court's conclusion is fully supported by the record. Based on the record in the instant case, counsel's performance was within the wide range of professionally competent assistance. Even assuming arguendo deficient performance by defense counsel, Urgelowich has not shown

prejudice. Thus, Petitioner's ineffectiveness claim fails because he has shown neither deficient performance nor resulting prejudice. <u>See</u> Response at 24-27.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Urgelowich seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Urgelowich "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the

petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Amended Petition (Doc. 3) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.    If Urgelowich appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of November, 2014.


MARCIA MORALES HOWARD
United States District Judge


sc 11/5
c:
Alex George Urgelowich
Ass't Attorney General (McCoy)